# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

DANIELLE GILLISPIE,

                Plaintiff,

v.

LABORATORY CORPORATION OF
AMERICA and
NATHAN MILAM,

                Defendants.

Civil Action No: 2:25-cv-00117

## <u>DECLARATION OF MICHAEL A. PAVLICK</u>

I, Michael A. Pavlick, declare as follows under the penalty of perjury:

1.     I am over the age of eighteen and competent to testify to the matters set forth herein.

2.     This law firm represents Defendant Laboratory Corporation of America Holdings (incorrectly named herein as "Laboratory Corporation of America") ("<u>Labcorp</u>") in the above-captioned action.

3.     Attached as <u>Exhibit A</u> are true and complete copies of all process, pleadings, and orders filed in this action, currently pending in the Circuit Court of Kanawha County, West Virginia, Case No. CC-20-2025-C-40.

4.     Attached as <u>Exhibit B</u> is a true and correct copy of the Notice of Service of Process received by Labcorp.

5.     Attached as <u>Exhibit C</u> are true and correct copies of (i) the docket and (ii) the notice of attempted service on Nathan Milam for Case No. CC-20-2025-C-40 in the Circuit Court of Kanawha County, West Virginia.

322564234.1

6.      Attached as <u>Exhibit D</u> is a true and correct copy of the North Carolina Secretary of State listing for Labcorp.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED at Pittsburgh, Pennsylvania, this 24th day of February, 2025.


/s/ Michael A. Pavlick
_____
Michael A. Pavlick

322564234.1

# Exhibit A

E-FILED | 1/10/2025 1:07 PM
CC-20-2025-C-40
Kanawha County Circuit Clerk
Cathy S. Gatson

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**DANIELLE GILLISPIE,**

      **Plaintiff,**

**v.**                                      **Civil Action Number:  24-C-**
                                                       **Judge:**

**LABORATORY CORPORATION OF AMERICA,**
**NATHAN MILAM,**

      **Defendants.**

## COMPLAINT

COMES NOW Plaintiff Danielle Gillispie (hereinafter "Gillispie" or "Plaintiff"), by the undersigned counsel, and for her Complaint against Defendant states as follows:

### PARTIES – JURISDICTION - VENUE

1.      At all times herein, Plaintiff Gillispie, was a Kanawha County, West Virginia resident.

2.      At all times material to this action Plaintiff was employed by Laboratory Corporation of America ("LabCorp" or "Defendant" hereinafter).  LabCorp is a foreign corporation.  LabCorp, at all times relevant herein, operated a physical location in Kanawha County, West Virginia. LabCorp is licensed to conduct business in Kanawha County, West Virginia.

3.      At all times relevant Nathan Milam ("Milam", hereinafter), upon information and belief, was a resident of Kanawha County, West Virginia. Milam was employed by LabCorp and worked with Gillispie at the same LabCorp location in Kanawha County, West Virginia.

4.      Wherefore, Jurisdiction and Venue are proper herein. Venue is proper pursuant to W.Va. Code §56-1-1 as all events giving rise to this action occurred in Kanawha County, West Virginia.

5.      This Court has jurisdiction to hear this matter pursuant to W.Va. Code §51-2-2.

- 1 -

## FACTS RELEVANT TO THE COMPLAINT

6.    Plaintiff fully restates, as if set forth verbatim herein, all prior paragraphs to this Complaint.

7.    Gillispie encountered an incident of sexual harassment in the molecular lab by a co-worker at LabCorp on or about December 28, 2023. The encounter occurred around 2:00 p.m. after Gillispie had returned from her lunch break. On this day, the workload was light in comparison to other days.

8.    Gillispie made a comment to Milam about the light workload. She stated that she would rather be busy than just sitting around. Milam replied, "I know something we could do". Gillispie asked what that would be? Milam responded by making hand motions insinuating sexual intercourse. Gillispie immediately tried to change the subject. Gillispie reviewed her paperwork and made another reference to a light workload. Gillispie stated, "is that all I had done today?" Milam responded by making comments about her physical appearance along the lines of "except looking good". Gillispie left the immediate vicinity of Milam after the sexually suggestive comments and actions.

9.    Milam followed her. Milam continued to make sexually charged comments and asked Gillispie if she kept her nude photos in her email. Gillispie responded "no". Milam continued to badger her for nude photos of herself causing Gillispie to experience anxiety, distress, and anguish.

10.    Thereafter, Gillispie tried to avoid Milam by returning to her workstation. Milam followed her again and proceeded to stare at her, causing her to experience more distress. To avoid eye contact with Milam, Gillispie began to act as if she was cleaning her workstation. Glilispie then heard Milam's lips smacking as if he was chewing gum very loudly. This was the first time she had observed Milam making such sounds. She looked over at Milam and Milam opened his mount and moved his tongue in a sexual manner at Gillispie. Gillispie was not only uncomfortable, but also frightened as this was the first time she was alone with Milam in the lab. Shortly thereafter, employees Stacey Reeves and Amanda Armes returned to the lab from the "Sliders side" and said they were going to break. Gillispie jumped up and said

"Great, I will join" to get away from Milam.  As she went to leave, he made the comment "What are 'y'all' going to do, talk about me?

11.    Both Reeves and Armes noticed that Gillispie was distraught.  Gillispie informed Reeves and Armes of Milam's actions once they got outside. Reeves and Armes stated that Milam had been trying to engage in sexual intercourse with Gillispie since the day she arrived. Gillispie stated to Reeves and Armes that she was traumatized and uncomfortable. Gillispie, along with Reeves and Armes returned inside the LabCorp "receiving area".  She encountered another employee, Patrick Hancock, near the double doors in receiving and told Hancock what happened. Gillispie then physically hid from Milam until he had left, and clocked out early herself due to the anguish she was experiencing.  The amount of disrespect, embarrassment, shock and uncertainty for my safety was overwhelming. Gillispie then reported the sexual harassment to her direct manager after leaving work.  Gillispie reported that she could not come back to the lab and be around Milam.  Gillispie emailed a statement on the same day.  The next day Gillispie got a "text" from her manager stating that Human Resources would be calling Gillispie.

12.    Human Resources did not call Gillispie.  Around January 3, 2024, Gillispie "text" her manager inquiring as to updates and to see why she wasn't contacted by Human Resources.

13.    Gillispie was told by her manager that they assumed she abandoned her position, which was completely untrue. Gillispie stated that she didn't quit but that she was afraid to work with Milam. Gillispie was then told that it was an "HR matter" and there was "an investigation".

14.    Gillispie re-stated that she did not quit.  Gillispie then discovered that she was put on a "termination list". Gillispie stated that she wanted something to be done about the sexual harassment she experienced and that she did not feel safe working with Milam. Gillispie was then told that it would be up to HR to "reinstate" her employment.  The same HR that was apparently investigating the sexual harassment. Gillispie asked if Milam was still there and was told "yes, he is".

- 3 -

15.     On the evening of January 4, 2024, Gillispie finally received a call from HR. She was interviewed for around 25 minutes by HR. Throughout the interview, HR downplayed the sexual harassment. HR even stated to Gillispie that it was her interpretation, not sexual harassment. Gillispie expressed how upset she was and how it affected her existing mental health issues.

16.     HR confirmed that Milam was still working. HR indicated that Milam would not be disciplined. Gillispie then asked if she could be compensated for the work missed. HR responded by stating that it would recommend paid administrative leave of absence. Gillispie was then informed that she would hear back from HR "sooner or later" about the investigation.

17.     The next day, January 5, 2024, Gillispie was contacted by her manager who stated the investigation was over, and presented Gillispie two options: one would be using her personal leave balance (she had none, and this option would have placed her in a negative status – which would be an "adverse employment action"), or option two, which would have been "unpaid" and force Gillispie to move her work location to accommodate Milam, not Gillispie. Gillispie was then informed that LabCorp would set a "rule" that Gillispie could not speak to Milam or approach him during work hours and that she would be required to report to work on January 9, 2024.

18.     Even if she moved her workplace she would still be in the same room as Milam. Gillispie stated that she couldn't be in the same room as him as she was scared and highly upset about his actions, and that "now, [Milam] knows [Gillispie] reported him". Gillispie again expressed that she didn't that the options were fair but was given no other choice. Gillispie did not want to resign from her position at LabCorp but was forced to do the same due to the hostile work environment created. The sexual harassment experienced by Plaintiff was severe and pervasive enough to alter the conditions of employment and created an abusive work environment.

19.     LabCorp is an employer and person as defined by W. Va. Code Ann. § 16B-17-3. At all relevant times herein, LabCorp had more than 12 employees working in the State of West Virginia.

20.     Milam is a person as defined by W. Va. Code Ann. § 16B-17-3. *Hanlon v. Chambers*, 195 W. Va. 99, 103, 464 S.E.2d 741, 745 (1995).

21.     Gillispie is a protected person as defined by W. Va. Code Ann. § 16B-17-3.

22.     While employed at LabCorp Gillispie was sexually harassed and reported the same. Gillispie was retaliated against for reporting the illegal actions as she was presented with two options that were not sufficient to protect her from further harassment. Gillispie suffered an adverse employment action: forced termination/constructive termination as the actions of LabCorp (or inactions) constructively altered her working conditions. The working conditions created by or known LabCorp were so intolerable that a reasonable person, Plaintiff herein,  would be compelled to quit. *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 111, 124, 506 S.E.2d 554, 567 (1997)

23.     In addition, Gillispie alleges *unlawful retaliatory discharge* per the HRA. Gillispie engaged in a protected activity of reporting the sexual harassment; LabCorp was aware of the protected activities engaged in by Gillispie; Gillispie was subsequently forced to resign and (absent other evidence tending to establish a retaliatory motivation); Gillispie was forced to resign following her protected activities within such period of time that the court can infer retaliatory motivation. Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986)." Syl. pt. 1, *Brammer v. Human Rights Commission*, 183 W.Va. 108, 394 S.E.2d 340 (1990). The HRA prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act. *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995). Herein, Gillispie's complaints were met with the retaliatory action of giving her an ultimatum for her resignation.

24.     Gillispie has suffered damages including but not limited to emotional distress, having to be medicated, loss of enjoyment of life, stress, anxiety, sleepless nights, fear, annoyance, and attorney's fees/cost. Plaintiff's claims will include but not be limited to: Violations of the WV-HRA, Sexual Harassment (HRA), and wrongful termination (HRA).

**COUNTS I-III**
**VIOLATIONS OF THE WEST VIRGINIA HUMAN RIGHTS ACT**
**BASED UPON GENDER- SEXUAL HARASSMENT (ALL FORMS) - RETALIATION**

25.     Plaintiff incorporates all preceding paragraphs of her Complaint as if fully set forth herein verbatim.

26.     The plaintiff's gender places her in a protected class under the West Virginia Human Rights Act. 5. To establish a claim for sexual harassment under the West Virginia Human Rights Act, W.Va.Code, 5–11–1, et seq., based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.. The sexual conduct that Gillispie was exposed to herein was unwelcome, based on her sex, sufficiently severe or pervasive to alter her conditions of employment, created an abusive work environment, and was imputable on some factual basis to the employer as set forth above. After reporting the conduct, Gillispie was forced to resign. The same is direct retaliation for reporting sexual harassment in as much as her "options" were not acceptable as they would require her to work with the harasser, and the harasser was not disciplined.

27.     An employee may state a claim for hostile environment sexual harassment if unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature have the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment. The actions set forth in this Complaint were

- 6 -

unwelcome. The same unreasonably interceded with her work performance and created an intimidating, hostile, or offensive working environment. Namely after she complained she did not feel safe, and nothing was done to ensure her safety.

28.    Gillispie alleges unlawful retaliatory constructive discharge per the HRA. Gillispie engaged in a protected activity of reporting the sexual harassment; LabCorp was aware of the protected activities engaged in by Gillispie; Gillispie was subsequently constructively discharged and (absent other evidence tending to establish a retaliatory motivation); Gillispie's constructive discharge followed her protected activities within such period of time that the court can infer retaliatory motivation. Syl. pt. 4, *Frank's Shoe Store v. West Virginia Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986)." Syl. pt. 1, *Brammer v. Human Rights Commission*, 183 W.Va. 108, 394 S.E.2d 340 (1990). The HRA prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act. *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995). Plaintiff herein did express oppositions to the practice she reasonably and in good faith believed violated the provisions of the West Virginia Human Rights Act.

29.    Plaintiff's harm was caused by factors including, but not limited gender in violation of the West Virginia Human Rights Act. Specifically, as a bases Plaintiff states: (a) She was the target of sexual harassment by a male; (b) the illegal sexual harassment of Gillispie was known to LabCorp; (c) LabCorp retaliated against Gillispie; (d) Gillispie experienced harm in the form of emotional distress, and fear manifested by the sexual assault and sexual harassment; Gillispie was retaliated against and constructively terminated.

30.    But for her sex, Plaintiff wouldn't have been sexually harassed. Plaintiff's sex was a substantial factor in the above-listed actions. But for Plaintiff's sex, she would not have been subject to

sexual assault and sexual harassment, forced to be subjected to mental anguish caused by sexual harassment. Plaintiff is female. Plaintiff is a member of a protected class.

31.     The conduct was willful, wanton, reckless, malicious, intentional, and/or in direct disregard of Plaintiff's state-protected rights. Gillispie's rejection of the illegal actions led to her constructive termination from employment. All Defendants' actions entitle Gillispie to damages including, but not limited to, payment of back wages, fringe benefits, and seniority, actual damages, emotional damages, annoyance, inconvenience, aggravation, humiliation, other damages allowed by statute/common law, damages this Court deems appropriate and cost of litigation including attorney fees and witness fees. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered injury and damages including, but not limited to, loss of pay, emotional pain, suffering, humiliation, aggravation, annoyance, inconvenience, mental anguish, and other damages for which Defendants are liable.

32.     The West Virginia Human Rights Act prohibits discrimination in employment based on sex (WV Code Sec. 5-11-1 et seq.). The West Virginia Supreme Court has ruled that sexual harassment is a form of sex discrimination under the state Human Rights Act (*Westmoreland Coal Co. v. West Virginia Human Rights Cmsn.*, 382 S.E.2d 562 (1989)). The Act applies to all public employers and private employers with twelve (12) or more employees. Defendant has twelve (12) or more employees.

33.     The rules of the state Human Rights Commission (WV Admin. Code Sec. 77-4-1 et seq.) define "sexual harassment" as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

    a.  Submission to or rejection of the conduct is made a term or condition of an individual's employment or is exchanged for job benefits;

        i.  Herein Plaintiff was sexually assaulted and/or sexually harassed.

        ii. The Plaintiff complained of the same while still employed.

- 8 -

iii. Thus, LabCorp made it a condition of Plaintiff's work to be subjected to sexual harassment, and sexual assault as it failed to discipline the aggressor.

b.  Submission to or rejection of the conduct is used as the basis for employment decisions affecting the individual;

i. Plaintiff's complaints of sexual harassment were met doubt and not taken seriously;

ii. LabCorp then gave Plaintiff an ultimatum that did not address the illegal actions.

c.  The conduct unreasonably interferes with Gillispie's work performance or created an intimidating, hostile, or offensive working environment.

**WHEREFORE,** Plaintiff respectfully requests the Court grant the following relief, jointly and severally:

A.  Judgment for a sum of money to fully compensate Plaintiff;

B.  Compensatory damages;

C.  Punitive damages;

D.  Attorney's fees and costs, as well as all court costs and expenses and any other damage or expense or fee allowed by law;

E.  Front Pay, Back Pay, loss of enjoyment of life, embarrassment, inconvenience, aggravation, emotional harm, medical bills, and costs;

F.  Damages allowed per the WV-Human Rights Act;

G.  Punitive damages;

H.     All other damages allowed by West Virginia law for Plaintiff's claims as set forth herein; and

I.      Such other and further relief as this Court deems proper.

### THE PLAINTIFF DEMANDS A TRIAL BY JURY

**DANIELLE GILLISPIE,**

By Counsel:

/s/ D. Adrian Hoosier, II

D. Adrian Hoosier, II
West Virginia State Bar Identification Number:  10013
HOOSIER LAW FIRM, PLLC
213 Hale Street, Suite 100
Charleston, West Virginia  25301
T:  681-215-0642
F:  681-245-6192
Email: adrian@hlfwv.com

# Exhibit B



**null / ALL**
**Transmittal Number: 30671524**
**Date Processed: 01/24/2025**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kristina Cates<br>Laboratory Corporation of America Holdings<br>531 S Spring St<br>Burlington, NC 27215-5866 |
| **Electronic copy provided to:** | Anetta Outlaw<br>Heather Long<br>Mary Beth Maines |

| | |
|---|---|
| **Entity:** | Laboratory Corporation of America<br>Entity ID Number  0035873 |
| **Entity Served:** | Laboratory Corporation Of America |
| **Title of Action:** | Danielle Gillespie vs. Laboratory Corporation Of America |
| **Matter Name/ID:** | Danielle Gillespie vs. Laboratory Corporation Of America (16799729) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Kanawha County Circuit Court, WV |
| **Case/Reference No:** | 25-C-40 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 01/24/2025 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Hoosier Law Firm, PLLC<br>681-215-0642 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Exhibit C

# Case Docket Entries

CC-20-2025-C-40

| | | | |
|---|---|---|---|
| **Court:** | **Circuit** | **County:** **20 - Kanawha** | **Created Date:** **1/10/2025** | **Security Level:** **Public** |
| **Judge:** | **Richard D. Lindsay** | **Case Type:** **Civil** | **Case Sub-Type:** **Other** | **Status:** **Open** |

Related Cases:

Style: **Danielle Gillespie v. Laboratory Corporation of America**

---

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 1/10/2025 1:07:56 PM | E-Filed | | Complaint |
| | 1-1  1/10/2025 | Civil Case Information Statement | | |
| | 1-2  1/10/2025 | Complaint - New Complaint | | |
| | 1-3  1/10/2025 | Transmittal | | |
| | 1-4  1/10/2025 | Summons | | |
| 2 | 1/10/2025 1:07:56 PM | Judge Assigned | J-20021 | Richard D. Lindsay |
| 3 | 1/10/2025 1:07:56 PM | Party Added | P-001 | Danielle Gillespie |
| 4 | 1/10/2025 1:07:56 PM | Party Added | D-001 | Laboratory Corporation of America |
| 5 | 1/10/2025 1:07:56 PM | Party Added | D-002 | Nathan Milam |
| 6 | 1/10/2025 1:07:56 PM | Attorney Listed | P-001 | A-10013 - D. Adrian Hoosier, II |
| 7 | 1/10/2025 1:07:56 PM | Service Requested | D-001 | Secretary of State - Certified - Including Copy Fee |
| 8 | 1/10/2025 1:07:56 PM | Service Requested | D-002 | Sheriff - Including Copy Fee |
| 9 | 1/23/2025 9:41:39 AM | E-Docketed | | Supporting Documents - Acceptance of Service from Secretary of State as to Labatory Corporation of America |
| | 9-1  1/23/2025 | Supporting Document - Acceptance of Service from Secretary of State as to Labatory Corporation of America | | |
| | 9-2  1/23/2025 | Transmittal | | |
| 10 | 1/29/2025 1:48:42 PM | E-Docketed | | Service Return - Sheriff Return as to Nathan Mullins |
| | 10-1  1/29/2025 | Service Return - Sheriff Return as to Nathan Mullins | | |
| | 10-2  1/29/2025 | Transmittal | | |

# SUMMONS

*FILED 1/29/2025 1:48 PM*
*CC-20-2025-C-40*
*Kanawha County Circuit Clerk*
*Cathy S. Gatson*

CC-20-2025-C-40

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA
### Danielle Gillespie v. Laboratory Corporation of America

Service Type:    Sheriff - Including Copy Fee

NOTICE TO:    Nathan Milam, 4825 MacCorkle Avenue, SW, South Charleston, WV 25309

D. Hoosier, 213 HALE ST, STE 100, CHARLESTON, WV 25301

SERVICE:

| 1/10/2025 1:07:54 PM | /s/ Cathy S. Gatson |
|---|---|
| Date | Clerk SC |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick    *No Such Employee*

1/28/2025
Date    Server's Signature

CC-20-2025-C-40
**Danielle Gillespie v. Laboratory Corporation of America**

# SERVICE RETURN

Exhibit D

⚑ Official website of the State of North Carolina   Here's how you know

**Secretary of State**
**Elaine F. Marshall**

MENU

Home    Business Registration    Search    Business Corporation

# Business Corporation

## Actions

- File an Annual Report/Amend an Annual Report
- Online Filing

- Order a Document Online
- Add Entity to My Email Notification List
- View Filings

- Print a Pre-Populated Annual Report form
- Print an Amended a Annual Report form

**Legal name:** Laboratory Corporation of America Holdings

**Secretary of State Identification Number (SOSID):** 0372743

**Status:** Current-Active

**Citizenship:** Foreign

**State of Incorporation:** DE

**Date formed:** 7/3/1995

**Fiscal month:** December

**Citizenship:** Foreign

**Registered agent:** Corporation Service Company **Note load times may be long**

**Registered office address**

2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

**Registered mailing address**

2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

**mailing address**

405 Maple Ave Unit # 411
Burlington, NC 27216

**Principal office address**

531 South Spring Street
Burlington, NC 27215

**Officers**

- **Treasurer**

  Thomas J. Kremer

  531 South Spring Street
  Burlington NC 27215

- **President**

  Adam H. Schechter

  531 South Spring Street
  Burlington NC 27215

- **Secretary**

  Sandra D. Van Der Vaart

  531 South Spring Street
  Burlington NC 27215

Return to top

## Other Agencies

NC Gov

State Board of Elections

North Carolina Birth Certificate Information

North Carolina State Bar

North Carolina Department of Commerce

North Carolina Department of Revenue

## Links of Interest

National Association of Secretaries of State

Intellectual Property

NASAA - North American Securities
Administrators Association

North Carolina Consular Corps

Secretary of State Disclaimer & Privacy

[All North Carolina Government Organizations](#)

Hours of Operation Monday - Friday 8:00 am - 5:00 pm



## North Carolina Secretary of State's Office

  

### Contact Us

[919-814-5400](#)    [Support](#)    [Division Directory](#)